IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JESUS MARAVILLA, Individually §
and on Behalf of All Others §
Similarly Situated, §
§
      Plaintiff, §
§
v. § CIVIL ACTION NO. H-18-1309
§
GRUMA CORPORATION, d/b/a MISSION §
TORTILLAS, §
§
      Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Jesus Maravilla ("Plaintiff"), on behalf of himself and other similarly situated individuals, brings this action against defendant Gruma Corporation, d/b/a Mission Tortilla ("Defendant") for failure to pay overtime wages and failure to maintain accurate records under the Fair Labor Standards Act ("FLSA"), quantum meruit, and promissory estoppel.[1] Pending before the court is Defendant's Second Motion to Dismiss or, in the Alternative, Compel Arbitration ("Defendant's Second Motion to Dismiss") (Docket Entry No. 21). For the reasons stated below, the court will grant the motion.

---

[1] See Plaintiff's First Amended Complaint ("Amended Complaint"), Docket Entry No. 16, pp. 8-14 ¶¶ 40-65.

## I. Factual and Procedural Background[2]

Defendant is a corporation that distributes tortillas, tortilla chips, and other food products to retail customers through its subsidiaries. Plaintiff and members of the proposed class distribute Defendant's products to its retail customers according to guidelines and schedules negotiated between Defendant and the retail customers. Plaintiff alleges that Defendant negotiates with the retailers virtually all terms of the relationship and that Plaintiff and members of the proposed class "must strictly follow Defendant instructions and adhere to the pricing, policies, and procedures negotiated between Defendant and their retailer-customers."[3] Plaintiff alleges that "[b]ecause they were misclassified as non-employees, Plaintiff and members of the proposed Federal Collective Group were denied the rights and benefits of employment, including, but not limited to overtime premium wages."[4]

Plaintiff and Defendant signed a Store Door Distributor Agreement ("Distributor Agreement") that governs the relationship between the parties.[5] The Distributor Agreement contains an arbitration clause that states:

---

[2] See id. at 3-8 ¶¶ 11-39.

[3] Id. at 5 ¶ 19.

[4] Id. at 8 ¶ 35.

[5] Distributor Agreement, Exhibit A to Defendant's Motion to Dismiss, or in the Alternative, to Compel Arbitration ("Defendant's First Motion to Dismiss"), Docket Entry No. 11-1.

-2-

> . . . [A]ny and all other claims and causes of action arising out of or relating to this Agreement . . . shall be resolved by arbitration through JAMS/Endispute ("JAMS") as provided in Subsection 15(i)(iii) below.[6]

The Distributor Agreement also contains class waiver provision.[7]

On April 26, 2018, Plaintiff filed this action and a motion for class certification of state law claims.[8] Defendant filed its First Motion to Dismiss[9] and a motion to stay class certification proceedings.[10] Plaintiff filed an amended complaint that adds claims for promissory estoppel and quantum meruit,[11] another motion for conditional certification,[12] and a response to Defendant's First Motion to Dismiss.[13] On June 5, 2018, Defendant filed its Second

---

[6] Id. at 22, Section 15(i)(ii).

[7] Id. at 21, Section 15(g) ("Accordingly, the parties mutually disclaim and waive the right to pursue against one another (1) any class action claims or causes of action of whatever nature, . . . .").

[8] See Plaintiff's Original Complaint, Docket Entry No. 1; Plaintiffs' Motion for Class Certification of State Law Claims Pursuant to Fed. R. Civ. P. 23, Docket Entry No. 2.

[9] See Defendant's First Motion to Dismiss, Docket Entry No. 11.

[10] See Motion to Stay Class Certification Proceedings in Light of Plaintiff's Agreement to Individual Arbitration, Docket Entry No. 12.

[11] See Amended Complaint, Docket Entry No. 16.

[12] See Plaintiff Motion for Conditional Certification, Docket Entry No. 19.

[13] See Plaintiff's Response to Defendant's Motion to Dismiss or, in the Alternative, Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 20.

Motion to Dismiss seeking an order dismissing this action and requiring Plaintiff to arbitrate his claim with Defendant.[14]

## II. Analysis

Defendant argues that because Plaintiff signed the Distributor Agreement -- which requires mandatory arbitration of the claims and incorporates the JAMS Streamlined Arbitration Rules and Procedures -- the court should dismiss this action and compel individual arbitration.[15] Plaintiff responds that the arbitration clause in the Distributor Agreement is neither valid nor enforceable because the arbitration clause was written in English, Plaintiff only speaks and reads Spanish, and Defendant did not provide an alternative version of the arbitration clause in Spanish.[16]

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

---

[14]See Defendant's Second Motion to Dismiss, Docket Entry No. 21.

[15]Id. at 14.

[16]Plaintiff's Response, Docket Entry No. 20, pp. 3-5. Plaintiff's Response was filed in response to Defendant's First Motion to Dismiss, Docket Entry No. 11. Defendant filed its Second Motion to Dismiss on the same day Plaintiff's Response was filed. Because Defendant's arguments in the Second Motion to Dismiss regarding arbitration are virtually identical to its arguments in its First Motion to Dismiss, Plaintiff's arguments in Response apply with equal force to Defendant's Second Motion to Dismiss.

of any contract." 9 U.S.C. § 2. Underlying the FAA is "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted); see Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts -- no more and no less.").

Arbitrability is a threshold question to be determined at the outset, before deciding conditional certification. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018) (citing Reyna v. International Bank of Commerce, 839 F.3d 373, 377-78 (5th Cir. 2016)). In determining whether to enforce an arbitration agreement "[f]irst, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Id. (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). If the party seeking arbitration argues that there is a delegation clause, the court performs the first step of the analysis to determine if an agreement to arbitrate was formed, then determines if the agreement contains a valid delegation clause. Edwards, 888 F.3d at 743-44. The court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or existence' challenges." Arnold v. Homeaway, Incorporated, 890 F.3d 546, 550 (5th Cir. 2018) (citations omitted).

> If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator. Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists. See Kubala v. Supreme Products Services, Inc., 830 F.3d 199, 202 (5th Cir. 2016). Since Kubala, we have reiterated that the first step of the test is limited to contract formation.

Edwards, 888 F.3d at 744. A court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3353-54 (1985). The court must therefore first decide whether an agreement to arbitrate was formed.

Plaintiff does not challenge the formation or existence of the Distributor Agreement or the arbitration clause in the Distributor Agreement. Instead he challenges the validity of the arbitration clause by arguing that it is unconscionable.[17] Unconscionability based on an inability to understand English is not a contract formation issue under Texas law. See Tamez v. Southwestern Motor Transport, Inc., 155 S.W.3d 564, 570 (Tex. App. -- San Antonio, 2004); Doskocil Manufacturing Company, Inc. v. Sang Nguyen, Civil Action No. 02-16-00382, 2017 WL 2806322, at *5 (Tex. App. -- Fort Worth, June 29, 2017) ("a contract signatory's inability to understand English is not a defense to contract formation."). Because Plaintiff challenges the validity rather than the formation

---

[17]See Plaintiff's Response, Docket Entry No. 20, p. 5.

of the arbitration clause, the court must consider whether the agreement to arbitrate contains a valid delegation clause. See Arnold, 890 F.3d at 551 (5th Cir. 2018) ("[Plaintiff's] allegation that a particular provision of the contract is illusory is properly considered a validity challenge rather than a formation challenge. And so, we move on to consider the parties' arguments concerning the purported delegation clause.").

Defendant argues that the arbitration clause includes a delegation clause through the incorporation of JAMS.[18] The arbitration clause states that "any and all other claims and causes of action arising out of or relating to this Agreement . . . shall be resolved by arbitration through JAMS/Endispute"[19] and that all arbitration proceedings will be governed by the JAMS Streamlined Arbitration Rules and Procedures ("JAMS Streamlined Rules").[20] JAMS Streamlined Rule 8 states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to

---

[18]Defendant's Second Motion to Dismiss, Docket Entry No. 21, p. 14.

[19]Distributor Agreement, p. 22, Section 15(i)(ii).

[20]Id. at 23, Section 15(i)(iv) ("All arbitration proceedings, once properly commenced, shall proceed pursuant to JAMS Streamlined Arbitration Rules and Procedures ('JAMS Streamlined Rules') or such other rules as JAMS may then decide are applicable.").

> determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Streamlined Arbitration Rules & Procedures, JAMS, p. 11, 2014. Because the arbitration clause expressly incorporates the JAMS Streamlined Rules, which give the arbitrator the power to determine arbitrability, the parties have agreed to arbitrate arbitrability, including disputes about validity. See Green Tree Servicing, L.L.C. v. House, 890 F.3d 493, 503-04 (5th Cir. 2018) ("The district court did not err in ruling that the parties' express incorporation of the JAMS rules provides clear evidence that they agreed that the arbitrator would decide arbitrability."); Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 262-63 (5th Cir. 2014) ("express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."). The court "must treat [the delegation clause] as valid absent any specific challenge to the delegation clause by [Plaintiff]." Edwards, 888 F.3d at 746. Plaintiff challenges the agreement to arbitrate as a whole, but does not specifically challenge the delegation clause. The court therefore concludes that the parties have agreed to submit any issues of arbitrability to the arbitrator.

Because the arbitration clause contains a class-action waiver and because the class-action waiver is enforceable, see Epic Systems Corp. v. Lewis, 138 S. Ct. 1612, 1623 (2018), the court

concludes that Plaintiff must submit to individual arbitration. The court will therefore grant Defendant's Second Motion to Dismiss and compel Plaintiff to arbitrate this dispute individually.[21] See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

### III. Conclusion

For the reasons set forth above, Defendant's Second Motion to Dismiss or, in the Alternative, Compel Arbitration (Docket Entry No. 21) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 26th day of July, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[21]Because the court will dismiss this case in favor of individual arbitration, Defendant's alternative motion to dismiss Plaintiff's claims in the event that the court retains jurisdiction are moot. See Defendant's Second Motion to Dismiss, Docket Entry No. 21, pp. 17-23.